UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| J. MAC MORGAN | CIVIL ACTION |
| VERSUS | No. 07-6252 |
| MEBA MEDICAL & BENEFITS PLAN | SECTION: I/5 |


### ORDER AND REASONS

Before the Court is a motion filed on behalf of plaintiff, J. Mac Morgan ("Morgan"), to remand this action pursuant to 28 U.S.C. § 1447 (2006) for lack of subject matter jurisdiction.[1] For the following reasons, plaintiff's motion is **GRANTED**.

### *BACKGROUND*

In December 1997, Morgan was allegedly retained by defendant, MEBA Medical and Benefits Plan ("MEBA"),[2] to provide Coast Guard legal-aid services for Christopher Dresser ("Dresser").[3] Morgan allegedly provided these services over the course of the next ten years,

---

[1] R. Doc. No. 3.

[2] MEBA is an employee welfare benefit plan that provides certain benefits to participants and beneficiaries. R. Doc. No. 20, mem. opp'n to mot. to remand at 2.

[3] R. Doc. No. 1, pt. 2, state ct. pet. ¶ 2; Mot. remand, ex. 1, Morgan aff; Mot. remand, ex. A, Coast Guard Legal Aid Referral Form.  One of the benefits offered pursuant to Dresser's plan is the provision of counsel in the event a participant "receives notice or notification of an investigation, complaint or any other action instituted by the United States Coast Guard, that may adversely affect the status of such [participant's] United States Coast Guard license." R. Doc. No. 1, notice of removal, ex. B, MEBA Rules and Regulations art. XIII-A, at 28-29.

until July 13, 2007, when MEBA notified Morgan that it would no longer pay for Dresser's legal services.[4]  Upon receiving this notice, Morgan allegedly sent, by certified mail, an invoice for services that were rendered after the last payment to Morgan, but before Morgan received MEBA's notice that it would not pay for further legal services provided Dresser.[5]  Morgan alleges that MEBA has failed to pay the balance of the invoice sent it.[6]

On September 10, 2007, Morgan filed his petition in state court alleging that MEBA owed him the balance of the invoice and attorney's fees pursuant to Louisiana's open-account statute.[7]  On September 28, 2007, MEBA removed the lawsuit to this Court alleging that this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the controversy arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 (2006).[8]  On October 3, 2007, Morgan filed a motion to remand.

## *LAW AND ANALYSIS*

**I.     Standard of Law**

*A.     Motion To Remand*

A district court must remand a case to state court if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *Preston v.*

---

[4] Pet. ¶¶ 3-4.  The July 13, 2007, notification letter stated that MEBA would not cover the costs of a lawsuit filed on behalf of Dresser against the Coast Guard.  Pet., ex. B, MEBA letter regarding payment.

[5] *Id.* ¶ 5; Pet., ex. A, letter and invoice sent to MEBA.  Morgan alleges that the unpaid balance of his services is $20,114.47.  Pet. ¶ 6.

[6] *Id.* at ¶ 6.

[7] *Id.* ¶ 7.

[8] R. Doc. No. 1, notice of removal ¶¶ 3-4.

*Tenet Healthsys. Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 813 n.3 (5th Cir. 2007).  The burden of establishing that federal jurisdiction exists in a case "rests on the party seeking the federal forum."  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  The removal statute is to be strictly construed.  *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).  Any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."  *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).  In order to determine whether jurisdiction is present, a court must "consider the claims in the state court petition as they existed at the time of removal."  *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

*B.     Federal Question Jurisdiction and ERISA Preemption*

United States District Courts have original subject matter jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Ordinarily, "[t]o determine whether the claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and ignore potential defenses."  *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003).  However, a federal statute "may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character" and it is, therefore, removable.  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 1546, 95 L. Ed. 2d 55, 63 (1987); *Arana*, 338 F.3d at 437.  It is well settled that "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) [of ERISA] removable to federal court."  *Metro. Life*, 481 U.S. at 66, 107 S. Ct. at 1548, 95 L. Ed. 2d at 65; *see McGowin v. ManPower Int'l,*

*Inc.*, 363 F.3d 556, 559 (5th Cir. 2004).

If a federal statute completely preempts an asserted cause of action, it is removable "because 'when the federal statute completely pre-empts the state law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08, 124 S. Ct. 2488, 2495, 159 L. Ed. 2d 312, 326 (2004) (*quoting Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S. Ct. 2058, 2063, 156 L. Ed. 2d 1, 8 (2003)); *see McClelland v. Gronwaldt*, 155 F.3d 507, 512 (5th Cir. 1998). ERISA § 502(a) is a federal statute that has such "extraordinary pre-emptive power" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life*, 481 U.S. at 65, 107 S. Ct. at 1547, 95 L. Ed. 2d at 64; *see Hartle v. Packard Elec.*, 877 F.2d 354, 355 (5th Cir. 1989) (stating that state law actions displaced by the ERISA civil enforcement provisions can be recharacterized as a federal law claim).

A plaintiff may not avoid federal jurisdiction by artfully pleading a completely preempted cause of action in terms of state law; the artful-pleading doctrine allows removal even if the plaintiff omits pleading necessary federal questions. *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 475-76, 118 S. Ct. 921, 925, 139 L. Ed. 2d 912, 919 (1998). Accordingly, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health*, 542 U.S. at 209, 124 S. Ct. at 2495, 159 L. Ed. 2d at 327; *see La. Health Servs. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529, 534 (5th Cir. 2006).

Preemption in the context of ERISA may be of two types: complete preemption or conflict (ordinary) preemption. *Copling v. Container Store, Inc.*, 174 F.3d 590, 594-95 (5th Cir. 1999). Complete preemption pursuant to ERISA § 502(a) provides removal jurisdiction, while ordinary or conflict preemption pursuant to ERISA § 514 does not.[9] *Roark v. Humana, Inc.*, 307 F.3d 298, 305 (5th Cir. 2002).

Claims falling within the scope of § 502 are completely preempted, even if such claims are artfully plead only in terms of state law, and can be removed. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999) (stating that the artful-pleading doctrine acts as an exception to the well-plead complaint, allowing removal of state law claims that are completely preempted by ERISA). State law causes of action are completely preempted by ERISA § 502(a)(1)(B) and federal question jurisdiction is established when both: (1) an individual, at some point in time, could have brought the claim under ERISA, and (2) there is no legal duty independent of ERISA or the plan terms that is implicated by the defendant's actions. *Aetna*

---

[9] ERISA § 502(a) provides that a participant or beneficiary of an employee benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see Halliburton Co. Benefits Comm. v. Graves*, 463 F.3d 360, 375-76 (5th Cir. 2006).

ERISA § 514 provides, in pertinent part, that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described" in ERISA. 29 U.S.C. § 1144. The United States Court of Appeals for the Fifth Circuit discussed conflict preemption pursuant to ERISA § 514:

> "State law claims [that] fall outside the scope of ERISA's civil enforcement provision, § 502, even if preempted by § 514(a), are still governed by the well-pleaded complaint rule and, therefore, are not removable under the complete preemption principles established in *Metropolitan Life*."
>
> The presence of conflict-preemption does not establish federal question jurisdiction. Rather than transmogrifying a state cause of action into a federal one-as occurs with complete preemption-conflict preemption serves as a *defense* to a state action.
>
> When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption.

*Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999) (citations and footnotes omitted).

*Health*, 542 U.S. at 209-10, 124 S. Ct. at 2495-96, 159 L. Ed. 2d at 327-28.

**II.     Discussion**

*A.     Whether Morgan Could Have Brought His Claim Pursuant to ERISA § 502(a)(1)(B)*

In determining whether Morgan's state law claim is completely preempted, the Court must first decide whether he could have brought his claim pursuant to ERISA § 502(a)(1)(B). It is settled that ERISA participants[10] and beneficiaries[11] of employee benefit plans are individuals who can bring claims pursuant to § 502(a)(1)(B); claims brought by these individuals for improper claim processing preempt state law causes of action. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52, 107 S. Ct. 1549, 1553, 95 L. Ed. 2d 39, 50-51 (1987). However, ERISA does not preempt "[a] state law claim . . . [that] does not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries)." *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir. 1990).

Morgan is not a participant, beneficiary, or other principle entity of the ERISA plan.[12] Accordingly, Morgan does not have independent standing to seek recovery pursuant to ERISA. *See Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 249 (5th Cir. 1990) (*citing Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1290 (5th Cir. 1988)).

Notwithstanding, when a participant or beneficiary assigns to a third-party service provider his right to receive benefits pursuant to an ERISA plan, such provider may bring a

---

[10] Participant is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." ERISA § 3(7), 29 U.S.C. § 1002(7).

[11] Beneficiary is defined as "a person designated by a participant by the terms of an employee benefit plan." ERISA § 3(8), 29 U.S.C. § 1002(8).

[12] Morgan aff. ¶¶ 2-3. MEBA does not dispute this fact. Mem. opp'n at 9.

6

*derivative action* to enforce an ERISA plan beneficiary's claim.  *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Employee Health Care Plan*, 426 F.3d 330, 333-34 (5th Cir. 2005); *Hermann*, 845 F.2d at 1289-90.  Absent a valid assignment of benefits,[13] Morgan would have no derivative standing to sue MEBA pursuant to ERISA § 502.  *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348 (5th Cir. 2002); *Tex. Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 216 (5th Cir. 1997) ("The fact that an assignee can have derivative standing does not end our inquiry.  We must determine whether the [plaintiff] has a valid assignment of the claims.").

MEBA provides no evidence that Dresser assigned his right to receive ERISA benefits to Morgan.  Conclusory allegations that Morgan is an assignee, without more, is not sufficient to prove an assignment.  *See Harris Methodist*, 426 F.3d at 334-37; *Lakeview Med. Ctr. LLC v. Aetna Health Mgmt, Inc.*, No. CIV. A. 00-CV-1761, 2000 WL 1727553, at *4 (E.D. La. Nov. 20, 2000) ("There are no documents presented that provide adequate legal proof of an actual assignment.").[14]

---

[13] In *Harris Methodist*, the Court noted that an "assignment is 'a manifestation to another person by the owner of a right indicating his intention to transfer, without further action or manifestation of intention, his right to such other person or third person.'"  426 F.3d at 334 (*quoting Wolters Village Mgmt. Co. v. Merchants & Planters Nat'l Bank of Sherman*, 223 F.2d 793, 798 (5th Cir. 1955)).  It is possible that Dresser assigned his rights to recover benefits pursuant to the ERISA plan to Morgan; however, no evidence of any such assignment is before the Court.

[14] MEBA further states that Morgan is suing in a derivative capacity because "he is Dresser's fiduciary and had previously made this *exact claim* to [MEBA] on Dresser's behalf."  Mem. opp'n at 9.  Morgan is not Dresser's *ERISA fiduciary* and, therefore, this fact has no bearing on whether Morgan is an enumerated party.  "Fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial advisor to a plan.  Obviously, a fiduciary would be the party sued to obtain benefits or other relief."  *Lakeview Med. Ctr.*, 2000 WL 1727553, at *3 n.4 (*citing* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)).  Further, the fact that Morgan appealed MEBA's decision not to provide coverage for Dresser's lawsuit is not relevant to whether the instant lawsuit is being brought by Morgan in a derivative capacity.

B.      *Whether Morgan's Open-Account Claim Implicates an Independent Legal Duty*[15]

In order for Morgan's state law claim to be completely preempted there must also be no independent legal duty implicated by MEBA's actions.  *See Aetna Health*, 542 U.S. at 209, 124 S. Ct. at 2495, 159 L. Ed. 2d at 327.  MEBA argues that because there is no contractual relationship between it and Morgan, Morgan cannot assert an open-account claim; therefore, MEBA contends there can be no independent legal duty implicated.  MEBA's argument is unpersuasive.

Louisiana Revised Statute § 9:2781 provides that an open account "includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions."  La. Rev. Stat. Ann. § 9:2781(C) (2005).[16]  "An open account is an account in which a line of credit is running and is open to future modification because of expectations of prospective business dealings.  Services are recurrently granted over a period of time."  *Tyler v. Haynes*, 760 So. 2d 559, 563 (La. Ct. App. 1997).

Louisiana courts have noted that an open-account claim is not synonymous with a breach of contract claim.  *Id.* at 562-63 ("A contract is significantly different from an open account."). In order to determine whether an open account exists between the parties, several factors are considered, including whether:  (1) there have been previous business transactions between the parties; (2) a line of credit was extended by one party to the other; (3) there are running, or

---

[15] Although "the absence of an assignment is dispositive of the complete pre-emption question," the Court will address whether the second prong of the *Aetna-Health* test is met.  *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 404 (3d Cir. 2004); *see Touro Infirmary v. Am. Mar. Officer*, Civil Action No. 07-1441, 2007 WL 4181506, at *5 (E.D. La. 2007).

[16] Section 9:2781 further provides, in pertinent part, that the term open account "shall include debts incurred for professional services, including but not limited to legal and medical services."

current, dealings; and (4) there are expectations of other dealings.  *Id.*  Therefore, the question of whether an open account exists turns not only on whether there is a direct contractual relationship between the parties, but also on whether a course of dealings, characterized by a running balance of charges and payments, exists between the parties.  *Id.*

Morgan and MEBA engaged in business transactions over the course of ten years, and MEBA allegedly paid for all services provided during that time.[17]  There was no line of credit extended, but the services were provided on a continuous basis, thereby making the dealings both current, or running, and leading to the expectation that there would be other dealings, *i.e.*, a continuation of legal services.  Therefore, MEBA's allegation that a contract does not exist between it and Morgan does not foreclose the possibility that Morgan has a valid claim against MEBA pursuant to Louisiana's open-account statute.[18]

Furthermore, Morgan's open-account implicates an independent duty and satisfies the second prong of the *Aetna Health* test.  A claim implicates an independent legal duty when the individual is entitled to the state law claim regardless of the terms of an ERISA plan.  *Aetna Health*, 542 U.S. at 210, 124 S. Ct. at 2496, 159 L. Ed. 2d at 328.  In order to determine whether a implicates an independent legal duty, the Court must examine the complaint, the statute upon which the claim is based, and any relevant plan documents.  *See Aetna Health*, 542 U.S. at 211, 124 S. Ct. 2496, 159 L. Ed. 2d at 328.

---

[17] During this period, Morgan allegedly submitted twenty-one invoices to MEBA for attorney's fees and expenses, and MEBA allegedly paid each of these.  Morgan aff. ¶ 5.

[18] The Court need not reach the question of whether Morgan, in the absence of a direct contractual relationship with MEBA, has a valid open-account claim against MEBA.  Such a question is for the state court to resolve.  The only question presented in the context of this Court's jurisdictional inquiry is whether Morgan's claim may be characterized as an independent claim separate from Dresser's right to recover benefits pursuant to the ERISA plan.

Morgan is not claiming that MEBA is liable for payment pursuant to the terms of the ERISA plan, but rather that he was injured because he provided legal services to Dresser in accordance with MEBA's referral and prior course of conduct. Morgan, to succeed in his open-account claim, must prove that an open account existed and that MEBA represented through words or conduct that his services would be paid for by MEBA, which does not require Morgan to stand in Dresser's shoes in order to recover. *See Ctr. for Restorative Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, Civil Action No. 06-9985, 2007 WL 1428717, at *5 (E.D. La. May 10, 2007) (holding that the plaintiff's open-account claim implicated an independent legal duty because of defendant's prior conduct and words). Therefore, the Court finds that Morgan's claims are not dependent upon the terms of the ERISA plan; MEBA has an independent legal duty to pay past-due debts it authorized.[19] *See Baylor Univ. Med. Ctr. v. Epoch Group, L.C.*, 340 F. Supp. 2d 749, 760 n.9 (N.D. Tex. Aug. 18, 2004) (holding that ERISA did not preempt a state law claim brought by the plaintiff of its own behalf as an independent creditor). Because there is no information before the Court proving that Morgan was an assignee of Dresser and because Morgan may have an independent state law claim, his claim is not completely preempted by ERISA.

Accordingly,

**IT IS ORDERED** that plaintiff's motion to remand[20] is **GRANTED** and the above-

---

[19] MEBA argues that the lawsuit was commenced against the Coast Guard without prior authorization from MEBA. Mem. opp'n at 3. If MEBA's relationship with Morgan required contact and prior approval before providing legal services, then it may prevail against Morgan's open-account claim. However, that argument goes to the merits of the dispute rather than the nature of the claim and is not the subject of the Court's inquiry. Rather, the inquiry is whether the open account between Morgan and MEBA led to an independent legal duty that does not arise pursuant to the terms of the ERISA plan.

[20] R. Doc. No. 3.

captioned matter is **REMANDED** to the Civil District Court for the Parish of Orleans pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that plaintiff's motion for attorney's fees and costs is **DENIED**.[21]

New Orleans, Louisiana, December __26th__, 2007.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[21] Section 1447(c) authorizes, in an order remanding a case, the "payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." 28 U.S.C. § 1447(c). "Central to the determination of whether attorneys' fees should be granted is the propriety of the defendant's decision to remove" *Garcia v. Amfels, Inc.*, 254 F.3d 585, 587 (5th Cir. 2001). Should the court "find that it was improper for the defendant to remove the case," the determination of whether to order costs and attorney's fees "is left to the court's discretion, to be exercised based on the nature of the removal and the nature of the remand." 28 U.S.C. § 1447(c) cmt. (1988 Revision). The Court does not find that it was improper for MEBA to remove and, therefore, will not order it to pay attorney's fees and costs.